**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

ILENE BOYAR,                                CIVIL CASE  NO.:
                                            3:06-cv-00663(RNC)

        **Plaintiff,**

  **v.**

YMCA OF NORWALK, INC.,

        **Defendant.**                    **May 15, 2009**

<u>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT</u>
<u>OF HER MOTION FOR SUMMARY JUDGMENT</u>

**I.**     **INTRODUCTION**

Plaintiff, Ilene Boyar, has brought suit against the Defendants for terminating her from

employment and otherwise discriminating against her in violation of the Americans with

Disabilities Act and the Connecticut Fair Employment Practices Act.  Ms. Boyar has alleged,

and the evidence reflects, that the Defendant's treatment - in compensating her, suspending

her, demoting her, denying her the ability to apply for a job opening and terminating her – were

in each instance violations of its own internal policies, disparate from the treatment of other

employees and in violation of both federal and state law.

Ms. Boyar brings this Motion for Summary Judgment because she has satisfied her

burden of proving a prima facie case of discrimination in each of these adverse employment

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-0800 • FACSIMILE: 203-319-1210 • EMAIL: MAIL@CBCCT.COM

actions taken against her and Defendant has either (a) failed to offer any legitimate nondiscriminatory basis for the adverse employment actions of (i) not compensating her as a salaried employee and (ii) refusing to allow her to apply for open positions within Defendant's organization,  or (b) in those instances where defendant did offer a legitimate basis for the adverse action, the undisputed facts establish that the reasons offered for her suspension, demotion and termination are false and therefore conclusively represent, in each instance, an impermissible pretext for illegal discrimination.   Thus, Ms. Boyar is entitled to summary judgment, and has herein moved the Court for the same.

## II.    PROCEDURAL HISTORY

On April 28, 2006, Plaintiff, Ilene Boyar, commenced this action alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et. seq.* (hereinafter "ADA"), the Family and Medical Leave Act, 29 U.S.C. § 2601 *et. seq.* (hereinafter "FMLA"), and the Connecticut Fair Employment Practices Act, C.G.S. § 46a-60(a)(1) (hereinafter "CFEPA").   On August 27, 2007, Defendant filed a Motion for Summary Judgment alleging, *inter alia*, that Plaintiff is not disabled within the meaning of the ADA (47, 48, 49).   Plaintiff filed her Opposition to Defendant's Motion on November 21, 2007 (61, 62, 63).   After the Court granted Defendant's Motion for Summary Judgment on April 15, 2008 (68) on grounds that Plaintiff did not have a disability within the meaning of the ADA, Plaintiff filed a Motion for Reconsideration of that ruling on April 29, 2008 (69).   After telephone conference with counsel for the parties on September 5, 2008, the Court vacated the judgment in favor of Defendant and granted

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-1210 • FACSIMILE: 203-319-0600 • EMAIL: MAIL@CBKCT.COM

Plaintiff's Motion for Reconsideration (80).  Plaintiff, however, conceded that her FMLA claim was time barred, and that count of her complaint is no longer pending.  Plaintiff was given leave to amend her complaint to include a claim that she was regarded as disabled by the Defendant, which Amended Complaint was filed on December 18, 2008 (85).  Defendant has filed an Answer and Affirmative Defenses in response to the Amended Complaint (89), and discovery regarding the new count in the Amended Complaint is complete.

Plaintiff herein seeks summary judgment because the affidavits, pleadings, depositions, and other documents in evidence show that Plaintiff has carried her burden of establishing her prima facie claim, and has also demonstrated that any alleged non-discriminatory reasons for Ms. Boyar's termination set forth the Defendant are false.  She has therefore carried her burden of proving impermissible discrimination against her on the basis of her disability.

III.    **FACTS**

The undisputed facts of this action are more fully set forth in Plaintiff's Rule 56(a)(1) statement, herein incorporated by reference.  The most salient of these facts support the following:

The Plaintiff, Ilene Boyar, was terminated from her employment with the Norwalk YMCA on April 20, 2004 allegedly for leaving the Fitness Center[1] unattended three days prior, on April 17, 2004.  At the time of her termination, Ms. Boyar had been employed for the Defendant for approximately eleven years, had held various job titles within the Norwalk YMCA organization,

---

[1] The parties use the terms "Fitness Center" and "Wellness Center" interchangeably.

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-0800 • FACSIMILE: 203-319-1210 • EMAIL: MAIL@CBKCGT.COM

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW · 1261 POST ROAD, P.O. BOX 577 · FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-0800 · FACSIMILE: 203-319-1210 · EMAIL: MAIL@CBKCCT.COM

and was familiar with the manner in which she was to perform her many job responsibilities. The evidence and testimony all reflect that there was no policy in place during Ms. Boyar's long tenure with the Norwalk YMCA that would prohibit her from leaving the Fitness Center unattended for a short while, especially in order to perform the essential functions of her job, as was the case on April 17, 2004. To the contrary, it is clear from the evidence on record that leaving the Fitness Center from time to time was a *requirement* of Ms. Boyar's job, as well as that of several other staff members at the Norwalk YMCA on the dates in question.

Ms. Boyar did, in fact, leave the Fitness Center unattended on April 17, 2004 for several minutes while she went to the bathroom, and then attended to her job duties that required her to remain outside the Fitness Center. However, it was her disability, and not this brief absence, that was the reason for Ms. Boyar's termination. Ms. Boyar suffers from osteogenesis imperfecta, a disease that makes her bones brittle and quick to break. During the time in question, Ms. Boyar could not (and continues to be unable to) leave her home without her wheelchair and/or her crutches, and was unable to attend her job without a crutch, crutches, and/or her wheelchair. Despite numerous requests for accommodations at her workplace as a result of this disability, Ms. Boyar's requests were largely ignored, and she was reprimanded on at least one occasion for requesting such accommodations. Such accommodation requests included spreading the equipment in the Fitness Center farther apart so that Ms. Boyar could more easily navigate the room in her wheelchair, having all staff meetings on the first floor so that Ms. Boyar could attend them, asking permission to be allowed to keep track of her time on

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 ● FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-0800 ● FACSIMILE: 203-319-1210 ● EMAIL: MAIL@CBCGT.COM

a time-sheet instead of having to maneuver behind the member services desk between classes to punch the time clock, and being provided with a portable phone so that she could be sure to have access a telephone line as quickly as possible if necessary.  Ms. Boyar also asked the Director on Duty component of the Assistant Fitness Director position—which would have required Ms. Boyar to walk the premises of the Norwalk YMCA—to be removed.  Notably, Ms. Boyar was reprimanded for making that request, and such request was listed as a reason that Ms. Boyar was ultimately refused the Assistant Fitness Director position.

In addition to being refused reasonable accommodations by the Norwalk YMCA, Ms. Boyar was also targeted to be reprimanded for infractions of which she was not guilty.  Ms. Boyar was suspended from employment with the Norwalk YMCA based on an accusation by her supervisor, John "Jeb" Backus, that she had disclosed confidential information.  This accusation had no basis in fact, and was never investigated by anyone except her accuser— Mr. Backus himself.  Ms. Boyar was shortly thereafter demoted from her position of Wellness Center Coordinator as a result of the suspension, and as a further result of that suspension and demotion, was later denied an opportunity to apply for the Director of Fitness position that had been promised to her.  It is undisputed, and has been admitted by the Chief Executive Officer of the Norwalk YMCA, Debbie Greenwood, that the failure to promote Ms. Boyar ased on her prior suspension and demotion is contrary to policy of the Norwalk YMCA.  In essence, the CEO of the Defendant admitted that Ms. Boyar was treated differently than other employees. All the more amazing is the fact that Ms. Greenwood herself participated in the discriminatory

treatment by allowing Mr. Backus to take charge of the purported "investigation."  Less than one month after Ms. Boyar sought and was denied the Director of Fitness position, Ms. Greenwood herself noted in Mr. Backus' annual review that a "strong" Director of Fitness was needed.

The evidence is also clear that, despite the supervisory positions she held at the Norwalk YMCA, Ms. Boyar was never a salaried employee as were the other, similarly situated, employees employed by Defendant.  Ms. Boyar had held the positions of, *inter alia*, Wellness Center Coordinator and Interim Fitness Director, and was still not a salaried employee.  The evidence reflects, however, that even administrative assistants were salaried employees, along with the Child Care Billing Coordinator, the camp councilor, child care secretary, and even members of the maintenance staff.

Ms. Boyar's termination on April 20, 2004 was the culminating event in a string of adverse and discriminatory employment actions taken against Ms. Boyar, which included the above-referenced actions taken against her and disparate treatment.  The evidence on the record, and as outlined in Plaintiff's Rule 56(a)(1) Statement of Facts and the instant Memorandum, clearly shows that Ms. Boyar has proven a prima facie case of discrimination under the Americans with Disabilities Act, and that the proffered and allegedly non-discriminatory reasons for Ms. Boyar's suspension, demotion, and termination are mere discriminatory pretext.

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW 1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-0800 • FACSIMILE: 203-319-1210 • EMAIL: MAIL@CBKCCT.COM

## IV.    ARGUMENT

### A.    Standard for Granting Summary Judgment

A motion for summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." [Fed.R.Civ.P. 56(c)]. The moving party bears the burden of demonstrating the absence of a material fact. [Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d. Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d. Cir. 1994))]. Once the moving party has met its burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

### B.    Standard for Proving Discrimination Under the Americans with Disabilities Act

The ADA prohibits an employer from discriminating against a qualified individual with a disability in the terms, conditions, and privileges of employment. [42 U.S.C. § 12112(a)]. Employment discrimination claims brought under the ADA are subject to the well-established burden-shifting analysis set forth by the court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Pursuant to that analysis, first, a plaintiff must establish a *prima facie* case; second, the employer must offer a legitimate, non-discriminatory reason for the discharge; and

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-1210 • FACSIMILE: 203-319-1210 • EMAIL: MAIL@CBCGT.COM

third, the plaintiff must then carry the burden of persuasion that the reason proffered by the employer is false, or a mere pretext.  [Heyman v. Queens Vill. Comm. For Mental Health for Jamaica Cmty. Adolescent Program, 198 F.3d 68, 72 (2d Cir. 1999)].   Where the reason proffered by the Defendant is false or pretextual, the plaintiff has succeeded in proving her claim of discrimination.  Id.; See also Cross v. N.Y. Transit Auth., 417 F.3d 241, 249 (2005).

1.    **Plaintiff has established a prima facie claim under the Americans with Disabilities Act.**

To prove a *prima facie* case of discrimination under the ADA, the plaintiff must demonstrate that (1) her employer is subject to the ADA; (2) she has a disability within the meaning of the ADA; (3) with or without reasonable accommodation, she could perform the essential functions of the job; and (4) she suffered adverse employment action because of her disability.  [Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001)].  "Plaintiff's burden at this stage is a minimal one; she only has to present facts giving rise to an inference of discrimination."   [Passanisi v. Berkley Administrators of Connecticut, 2007 WL 841946 (D.Conn. March 19, 2007) (attached hereto as Exhibit DD)].

a.    **There is no dispute that YMCA of Norwalk is an employer subject to the ADA, nor is there any dispute that Ms. Boyar could perform the essential functions of her employment at the YMCA of Norwalk, with or without reasonable accommodation.**

Pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12111, an employer is defined as a "person[2] engaged in industry affecting commerce who has 15 or more employees

---

[2] A "person" is defined in 42 U.S.C. § 2000e to include associations and corporations.

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-0800 • FACSIMILE: 203-319-1210 • EMAIL: MAIL@CBGCT.COM

for each working day in each of 20 or more calendar weeks in the current or preceding calendar year."  At the time of Ms. Boyar's termination on April 20, 2004, and for more than 20 calendar weeks prior thereto, the YMCA of Norwalk was a corporation having in its employ more than 15 employees, and the Defendant has not disputed this fact.  [Plaintiff's Exhibit I]. Defendant is, therefore, clearly an "employer" as that term is defined in the ADA, and subject to its provisions.

> **b.      During her Employment with the YMCA of Norwalk, Plaintiff had a Disability Within the Meaning of the ADA and was Regarded as Having a Disability.**

According to the ADA, disability means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  [42 U.S.C. § 12102(2); *see also* 29 C.F.R. § 1630.2(g)].   A three-pronged analysis, as set forth by the Court in *Bragdon v. Abbott*, 524 U.S. 624 (1998), must be done to determine whether Plaintiff has a disability within the meaning of subsection (A) of 42 U.S.C. § 12102(2).  [*See also* Colwell v. Suffolk County Police Dep't., 158 F.3d 635, 641 (2d Cir. 1998)].  The analysis requires first, that she suffered from a physical impairment; second, that she has identified a major life activity as defined by the ADA; and third, that her impairment "substantially limited" that major life activity. [Id.  *See also*, Zarzycki, *supra*, 30 F.Supp.2d 283 (D.Conn. 1998)].

Defendant has conceded that Plaintiff suffers from osteogenesis imperfecta, and that the disease is a physical impairment pursuant to 29 C.F.R. § 1630.2(h) (a physical impairment

means any physiological disorder or condition affecting the musculoskeletal system).  [Docket No. 48, Defendant's Memorandum pp. 11].  Defendant further concedes that standing, walking, and performing manual tasks are major life activities under the ADA. [Id. at 12.  *See also*  29 C.F.R. § 1630.2(i)].  The evidence before this Court further demonstrates that the Plaintiff's osteogenesis imperfecta, also known as "brittle bone disease", substantially limited her major life activities at all times relevant to Ms. Boyar's allegations, and that Ms. Boyar was all times regarded as being disabled.

The ADA does not define the term "substantially limited."  However, as used in the Code of Federal Regulations, it means:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or

> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

[29 C.F.R. § 1630.2(j)(1)].  Further, 29 C.F.R. § 1630.2(j)(2) provides that a court should consider (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment in determining whether an individual is substantially limited in a major life activity.  The court has a "statutory obligation to determine the existence of disabilities on a case-by-case basis." [Albertsons v. Kirkingburg, 527 U.S. 555

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-0800 • FACSIMILE: 203-319-1210 • EMAIL: MAIL@CBKCGT.COM

(1999)].  "The Act expresses that mandate clearly by defining 'disability' 'with respect to the individual,' 42 U.S.C. § 12102(2), and in terms of the impact of an impairment on 'such individual,' § 12102(2)(A)" [Id.].    The Act also requires that a plaintiff "prove a disability by offering evidence that the extent of the limitation in terms of their own experience . . . is substantial."  Id.   Furthermore, the ADA "addresses substantial limitations on major life activities, not utter inabilities."  [Bragdon v. Abbott, 524 U.S. 624, 641 (1998)].

The Equal Employment Opportunity Commission (hereinafter "EEOC") Compliance Manual has also given an example of what would be a substantial limitation:

> Example 2—CP, who has sickle cell anemia, frequently experiences severe back and joint pain.  As a result of the sickle cell disease, CP often cannot walk for more than very short distances.  CP's impairment (sickle cell anemia) substantially limits his ability to walk.  The average person in the general population can walk for more than very short distances.

2 *EEOC Compliance Manual* § 902, at 902-17).

Ms. Boyar must use, and at all times relevant to this action was required to use, a crutch, crutches, and/or a wheelchair to be mobile in her own home.  [Affidavit of Ilene Boyar, annexed hereto as Plaintiff's Exhibit V, ¶ 6].  She cannot leave her home without her crutches and/or wheelchair, and could not go to work at the YMCA of Norwalk without the same.  [Id. at ¶¶ 9, 10].  In the years relevant to this action, Ms. Boyar was required to walk with the assistance of a crutch or crutches, or to use a wheelchair.  [Id. at ¶ 7].  As set forth above, due to her osteogenesis imperfecta, Ms. Boyar was significantly limited in her ability to demonstrate or use equipment during her employment with the YMCA of Norwalk.  Ms. Boyar was unable to

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-0800 • FACSIMILE: 203-319-1210 • EMAIL: MAIL@CBKCT.COM

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-1210 • FACSIMILE: 203-319-0600 • EMAIL: MAIL@CBKCT.COM

demonstrate lunges, squats, calf raises, and several other leg exercises when she taught the women's strength training class, could not properly demonstrate any standing leg stretching techniques, could not demonstrate properly the use of the leg extension or leg curl machines, was unable to rack or carry any barbell plates over ten (10) pounds, was unable to demonstrate the upper body machines and upper body free weights unless she was in a seated position or otherwise braced from falling, and was unable to demonstrate the proper use of the treadmill, stairmaster, or stairmill machines. [Plaintiff's Exhibit V, Boyar Affidavit, ¶¶ 12-18].

Plaintiff did testify that she uses an elliptical machine or stationary bicycle for cardiovascular exercise. [Plaintiff's Exhibit A, Boyar Tr. p. 31]. She testified that her exercise routine lasts, depending on the day, anywhere from twenty minutes to one hour. [Id.]. This fact does not negate the conclusion that Ms. Boyar suffers from a disability within the meaning of the ADA. As is stated above, "The Act expresses that mandate clearly by defining 'disability' 'with respect to the individual,' 42 U.S.C. § 12102(2), and in terms of the impact of an impairment on 'such individual,' § 12102(2)(A)" [Id.]. The Act also requires that a plaintiff "prove a disability by offering evidence that the extent of the limitation in terms of their own experience . . . is substantial." Id. Furthermore, the ADA "addresses substantial limitations on major life activities, not utter inabilities." [Bragdon v. Abbott, 524 U.S. 624, 641 (1998)]. When looked at in the context of Ms. Boyar's own experience with osteogenesis imperfecta, it is clear that Ms. Boyar is disabled within the meaning of the Act. Ms. Boyar's disease affects every aspect of her life, as she is and has been unable to leave her home or go to work without her

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-0800 • FACSIMILE: 203-319-1210 • EMAIL: MAIL@CBKCT.COM

crutches and/or her wheelchair.  [Id. at ¶ 9].  She has required assistance in performing basic functions of life such as carrying groceries, doing her laundry, and performing certain tasks at work.

Ms. Boyar's co-workers also regarded Ms. Boyar as disabled.  CEO Debbie Greenwood testified that she was well aware of Ms. Boyar's "medical condition," "limited capabilities," and the fact that Ms. Boyar had difficulty going up to other floors at the YMCA.  [Deposition Transcript of Debra Greenwood 4/4/2007 ("Greenwood Tr."), relevant portions of which are attached hereto as Plaintiff's Exhibit C, p. 31].  Ms. Greenwood and John "Jeb" Backus, Ms. Boyar's supervisor, also testified that all meetings that Ms. Boyar would be required to attend were moved to the first floor to accommodate Ms. Boyar's disability.  [Plaintiff's Exhibit C, Greenwood Tr. pp. 167; Deposition Transcript of John Edward "Jeb" Backus 6/6/2007 ("Backus Tr.), relevant portions of which are annexed hereto as Plaintiff's Exhibit Y, p. 159].  Jeb Backus also recalled the certain accommodations needed to be made to Ms. Boyar, and that Ms. Boyar had certain physical limitations.  [Plaintiff's Exhibit Y, Backus Tr. pp. 159, 163].

The manner in which Ms. Boyar suffers and lives with her osteogenesis imperfecta makes it clear that she has a disability within the meaning of the Americans with Disabilities Act, and is regarded as having a disability within the meaning of the Act.  She has therefore satisfied this prong of proving her *prima facie* claim.

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-1210 • FACSIMILE: 203-319-0600 • EMAIL: MAIL@CBKCT.COM

**c.      There is no dispute that Ms. Boyar could perform the essential functions of her job at the Norwalk YMCA.**

Ms. Boyar was employed by Defendant for approximately eleven years, and was repeatedly found by her supervisors to perform at a level above average.  [Plaintiff's Exhibit W, Performance Reviews of Ilene Boyar].  Additionally, she was able to perform the functions of her job without accommodation, though she requested on several occasions that accommodations be made to her, including making the Fitness Center more wheelchair accessible by spreading the machines apart, and requesting that she be allowed to keep track of her time on a time-sheet instead of having to punch the time clock behind the member service desk.  [Deposition Transcript of Ilene Boyar 2/13/2007 ("Boyar Tr.") the relevant portions of which are annexed hereto as Plaintiff's Exhibit A, pp. 159, 168-69].[3]  There can, therefore, be no question but that Ms. Boyar could perform the essential functions of her job at the YMCA of Norwalk, and had done so for several years.

**d.      Ms. Boyar suffered adverse employment actions as a result of her disability.**

On April 20, 2004, Plaintiff, Ilene Boyar, was terminated from her employment at the Norwalk YMCA.  [Complaint ¶ 17; Boyar Tr. pp. 26-27].  There is no question that suspension, demotion, refusal to hire, and termination are adverse employment actions.  Sista, supra, at

---

[3] The policy requiring staff to leave the Fitness Center to punch a time clock behind the member service desk is just one example of many policies in place at the Norwalk YMCA that required staff to leave the Fitness Center unattended.

169; <u>Lovejoy-Wilson v. Noco Motor Fuel</u>, *Inc.*, 263 F.3d 208, 223 (2d Cir., Aug. 31, 2001) (holding that suspension without pay is sufficient to constitute adverse employment action); <u>Morris v. Lindau</u>, 196 F.3d 102, 110 (2d Cir. 1999) (adverse employment action defined broadly to include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand, as well as lesser actions such as negative evaluation letters and express accusations of lying)]. A plaintiff's burden of showing adverse employment action as a result of disability at this stage is de minimis. <u>Moran v. Premier Education Group, LP</u>, 2009 U.S. Dist. LEXIS 12568, *33-4 (Dist. of Conn., February 13, 2009) (attached hereto as Exhibit DD). It may be enough at this stage to show that the Defendant's actions with respect to Plaintiff's termination are inconsistent with its proffered reasons and testimony. <u>Id.</u> A series of events leading up to Ms. Boyar's termination demonstrate that the Plaintiff suffered adverse employment actions because of her disability.

On July 10, 2002, Ms. Boyar was required to take FMLA leave due to her disability. [Plaintiff's Exhibit A, Boyar Tr. pp. 63; Plaintiff's Exhibit L]. While she was out on leave, the position of Fitness Coordinator became available, and Ms. Boyar sought to apply for the position. [Plaintiff's Exhibit A, Boyar Tr. pp. 105-6]. Ms. Boyar was informed that she would not be considered for this position while she was out on FMLA leave, even though it was against YMCA of Norwalk policy to refuse to consider Ms. Boyar at that time. [Plaintiff's Exhibit M; Plaintiff's Exhibit A, Boyar Tr. pp. 105-6; Plaintiff's Exhibit C, Greenwood Tr. pp. 150-1]. In fact,

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-0800 • FACSIMILE: 203-319-1210 • EMAIL: MAIL@CBCCT.COM

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-0800 • FACSIMILE: 203-319-1210 • EMAIL: MAIL@CBCCT.COM

the Defendant has *never* offered *any legitimate* reason for the refusal to promote or otherwise hire Ms. Boyar for this position.

On October 23, 2003, Plaintiff was suspended without pay as a result of an allegation made against her by Jeb Backus that she disclosed information he requested she keep confidential.  [Plaintiff's Exhibit P, Plaintiff's Exhibit R].  Also as a result of this allegation, Plaintiff was informed that she would not be considered as a candidate for the position of Fitness Director, and would be demoted back to her position as Wellness Center Coordinator. [Plaintiff's Exhbiit R].[4]

---

[4] Ms. Boyar fervently denied that Backus had requested she keep any information confidential, and requested that an investigation take place and a board meeting be held.  [Boyar Tr. p. 136-37; Plaintiff's Exhibits O and P].   Despite Ms. Boyar's request that the circumstances surrounding her suspension be taken to the Board for discussion, no such meeting was ever conducted, as Greenwood testified that the Personnel Committee declined to investigate the matter.  [Greenwood Tr. p. 113].  Ms. Boyar complied with Backus' request that she submit a letter with her version of the events that had transpired.  Maria Devico, the employee to whom Ms. Boyar disclosed the allegedly confidential information, also gave a written statement providing the details of the conversation she had with Ms. Boyar.  [Plaintiff's Exhibit EE, Statement of Maria Devico, 10/23/03].  However, based on Backus' assertion alone, and without investigation by a neutral third party, Ms. Boyar was suspended.  When questioned about the basis on which she decided Ms. Boyar's history of events was not credible, Greenwood testified that "Just Ms. Devico's written testimony that it happened."  [Greenwood Tr. p. 97].  Importantly, Greenwood also testified that it was Backus who breached an agreement of confidentiality by discussing with Ms. Boyar a "confidential" conversation he had had with Ms. Devico.  [Greenwood Tr. p. 106-7].  Treatment of Ms. Boyar in this fashion was a direct violation of Defendant's policies and procedures, and can also be considered adverse employment action.  [Plaintiff's Exhibit FF, YMCA of Norwalk Personnel Policy, at Article VII; Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) (adverse employment action defined broadly to include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand, as well as lesser actions such as negative evaluation letters and express accusations of lying)].

Less than one month later, Greenwood performed an annual review of Jeb Backus, Chief Operating Officer of the Norwalk YMCA. In Backus' review, under the section titled "Areas of Improvement," Greenwood wrote that Backus should continue to "add new programs when . . . *strong* Fitness Director is afforded." [Plaintiff's Exhibit X, Performance Review of Jeb Backus, 12/19/03 (emphasis added)]. The Fitness Director position to which Ms. Greenwood referred was the very same position that Ms. Boyar had been promised and then denied immediately prior. [Plaintiff's Exhibit R]. Approximately two months later, Mr. Salvatore Basileo, the "eyes and ears of the supervisors" and of Greenwood at the Norwalk YMCA, was verbally instructed by Backus or Greenwood that the Fitness Center was to remain attended at all times. [Deposition Transcript of Salvatore Basileo 6/18/2007 ("Basileo Tr."), the relevant portions of which are annexed hereto as Plaintiff's Exhibit D, pp. 7, 12, 26]. Basileo testified that he was unaware up until that point in time of a policy that the Fitness Center was not to be left unattended. [Id.]. He further testified that he himself had twice allowed members into an aerobics area that was unsupervised and, though he was told both times he should not have done it, he was never issued a written reprimand, let alone demoted or terminated. [Basileo Tr. p. 51-2]. Approximately two months after Mr. Basileo was verbally told of the new policy, Ms. Boyar was terminated. Indeed, Basileo was present at the membership desk with Ms. Boyar at the time Greenwood came to reprimand Plaintiff. [Deposition Transcript of Ilene Boyar 2/27/2007 ("Boyar II Tr."), relevant portions of which are annexed hereto as Plaintiff's Exhibit B, pp. 12; Plaintiff's Exhibit Z, Disciplinary Memorandum 4/17/04].

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-0800 • FACSIMILE: 203-319-1210 • EMAIL: MAIL@CBKCT.COM

Finally, and throughout her employment with Defendant, Ms. Boyar was always a "non-exempt" employee and was paid hourly instead of by salary, despite the fact that she held positions materially similar to other employees in supervisory positions, who were all salaried, "exempt" employees.  [Plaintiff's Exhibit I].

Clearly, Defendant wanted to be rid of Ms. Boyar so that a "strong" fitness director could be hired in her place, as was done.  Though Plaintiff was qualified for the position of Fitness Director, Plaintiff had asked for reasonable accommodations that had mostly been denied, and Defendant did not want to have a fitness director that required or requested such accommodations.  Nowhere, perhaps, is this better exemplified than when Plaintiff was reprimanded for requesting accommodations to perform a job.  [Plaintiff's Exhibit K].  The facts cited above operate to establish the fourth prong of Plaintiff's *prima facie* case: that adverse employment actions were taken against Ms. Boyar as a result of her disability.

> **2.    The Defendant has Either Failed to Provide Any Reason for the Adverse Employment Action Taken against Ms. Boyar, or the Alleged Non-Discriminatory Reasons for Ms. Boyar's Termination are Patently False.  Therefore Ms. Boyar has Succeeded in Proving her Claim of Discrimination.**

As set forth above, the ADA prohibits discrimination against any "qualified individual with a disability because of the disability of such individual in regard to, inter alia, discharge from employment."  [Sista v. CDC Ixis North America, Inc. 445 F.3d 161, 169 (2d Cir. April 13, 2006) (internal quotations omitted)].  In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court "set forth the basic allocation of burdens and order of presentation

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-0800 • FACSIMILE: 203-319-1210 • EMAIL: MAIL@CBCGT.COM

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-0800 • FACSIMILE: 203-319-1210 • EMAIL: MAIL@CBCGT.COM

of proof" in a case alleging discriminatory employment practices.  [Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)].  The burden first rests on the plaintiff to establish a prima facie case.  The burden then shifts to the employer to offer a legitimate and non-discriminatory reason for the discharge of the plaintiff.  Obviously, if no such reason is offered by the employer, then the plaintiff has met her burden of proof.  If such a reason is offered, the plaintiff must then "carry the burden of persuasion that the proffered reason is a pretext."  [Sista at 169 (citing Heyman, supra, 198 F.3d 68, 72 (2d Cir. 1999)].

Once Plaintiff has established a *prima facie* case, the Defendant may offer what it claims is a legitimate reason for termination, which "if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action."  [Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 38 (2d Cir. 1994)].  "Plaintiff then must show that the proffered reason was merely a pretext for discrimination, which may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more."  [Heyman v. Queens Village Comm., 198 F.3d 68, 72 (2d Cir. 1999) (internal citations omitted)].  Additionally, "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive . . .  Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."

[Cross v. New York City Transit Authority, 417 F.3d 241, 249 (2d Cir. 2005) (citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 137 (2000)); Kahn v. Fairfield University, 357 F.Supp.2d 496,502 (2005) ("Evidence that an employer's reason is false, combined with the evidence presented to establish a prima facie case, in some cases can be sufficient to sustain a plaintiff's burden, and a plaintiff need not have further evidence of discrimination.")]. The record makes obvious, without question, that Defendant's reason for Ms. Boyar's suspension, demotion, and termination are false, and therefore conclusively an impermissible pretext for intentional discrimination.

> **a.    Defendant has offered no reason whatsoever for its refusal to allow Ms. Boyar to apply for the positions of Fitness Coordinator and Fitness Director, or for its refusal to make Ms. Boyar a salaried employee.**

Defendant has offered no legitimate, non-discriminatory reason at all for its refusal to allow Ms. Boyar to apply for the positions of Fitness Coordinator and Fitness Director. CEO Debbie Greenwood testified that it was against the policy of the Norwalk YMCA to refuse to consider Ms. Boyar's application for Fitness Coordinator while she was on FMLA leave. [Plaintiff's Exhibit C, Greenwood Tr. pp. 150-1]. She similarly testified that it was contrary to Norwalk YMCA policy for Ms. Boyar to be refused consideration for the Fitness Director position as a result of her suspension and demotion. [Plaintiff's Exhibit C, Greenwood Tr. pp. 146-7]. Yet, Ms. Boyar was denied the opportunity to apply for both of these positions, and no legitimate reason was ever offered for those decisions. Similarly, no explanation was ever

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-1210 • FACSIMILE: 203-319-0600 • EMAIL: MAIL@CBCGT.COM

offered for Defendant's refusal to treat Ms. Boyar as a salaried employee, despite the fact that all of her similarly situated counterparts were, in fact, salaried.  [Plaintiff's Exhibit I].  As set forth above, once a plaintiff has established a *prima facie* case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action taken.  Where the Defendant fails to offer a legitimate, non-discriminatory reason for adverse employment action, Plaintiff has successfully carried her burden of proving that she suffered illegal discrimination.  Heyman v. Queens Village Comm., 198 F.3d 68, 72 (2d Cir. 1999); and see generally McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Though Ms. Boyar has alleged additional adverse employment action aside from those just mentioned, Ms. Boyar is entitled to summary judgment on the foregoing grounds, as the Defendant has offered no reason whatsoever for the discriminatory conduct amounting to per se discrimination.

> **b.     Defendant's proffered reasons for Ms. Boyar's suspension, demotion, and termination are false, and Ms. Boyar has therefore carried her burden of showing illegal discrimination.**

As already noted, on October 23, 2003, Plaintiff was suspended without pay as a result of an allegation made against her by Jeb Backus that she disclosed information he requested she keep confidential.  [Plaintiff's Exhibit P].  Also as a result of this allegation, Plaintiff was informed that she would not be considered as a candidate for the position of Fitness Director, and would be demoted back to her position as Wellness Center Coordinator. [Id.].  Despite being told that an investigation into this incident would take place, Defendant produced no proof of any investigation other than the account of Ms. Boyar's accuser and supervisor, Jeb

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 ● FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-1210 ● FACSIMILE: 203-319-0600 ● EMAIL: MAIL@CBKCGT.COM

Backus.  [Plaintiff's Exhibit A, Boyar Tr. pp. 132-3, 140; Plaintiff's Exhibit C, Greenwood Tr. pp. 90, 97, 102-3, 106-7; Plaintiff's Exhibit O; Plaintiff's Exhibit P].  Though Ms. Boyar was certainly qualified for the Fitness Director position, she was denied that promotion allegedly as a result of her suspension and demotion.  However, less than one month later, Greenwood performed an annual review of Jeb Backus, Chief Operating Officer of the Norwalk YMCA.  In Backus' review, under the section titled "Areas of Improvement," Greenwood wrote that Backus should continue to "add new programs when . . . strong Fitness Director is afforded."  [Plaintiff's Exhibit X, Performance Review of Jeb Backus, 12/19/03].

According to Debbie Greenwood, CEO of the Norwalk YMCA at the time of Plaintiff's termination, Plaintiff was terminated because she left the Fitness Center unattended. [Greenwood Tr. p. 35].  Greenwood claims that it was and still is a strictly enforced policy of the Norwalk YMCA that the Fitness Center never be left unattended, and that any employee leaving the fitness center unattended would be subject to discipline.  [Greenwood Tr. p. 58-59]. Contrary to Greenwood's testimony, however, the record clearly demonstrates that it was common and accepted practice for the Fitness Center to be left unattended, and still is. Defendant has failed to produce evidence of any other employee ever terminated or even reprimaneded[5] for doing so.  In fact, it was even a company policy that the Fitness Center be left unattended from time to time so that Fitness Center staff could perform other functions of

---

[5] Defendant asserts that the plaintiff herself once reprimanded a Fitness Center employee under her supervision for leaving the room unattended.  However, this was a situation where the individual failed to show up for his shift, never stepping foot into the facility at all.  That particular incident is not at all analogous to the incident allegedly giving rise to Ms. Boyar's termination.  [Plaintiff's Exhibit GG].

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-0800 • FACSIMILE: 203-319-1210 • EMAIL: MAIL@CBCGT.COM

their jobs.    [Plaintiff's Exhibit AA; Plaintiff's Exhibit BB, Addendum to Fitness Staff Job Description, 5/30/01].    The Norwalk YMCA instructed its staff to "walk out into the hallway leading to the fitness center every 30 minutes to check for any items left in this area.  . . .  It is your responsibility to remove any personal belongings left in the hallways and place them in lost and found behind the member service desk."  [Plaintiff's Exhibit AA].   Further, Plaintiff was "required to give orientations to new members who join the YMCA of Norwalk" pursuant to the job description drafted by the Norwalk YMCA for its fitness staff.  [Plaintiff's Exhibit BB].    Also pursuant to the job description, Plaintiff would be required to "[g]ive a tour of the fitness center [to a] prospective member" which "may include taking the person in the second floor racquetball courts, main and auxiliary gyms."  [Id.]

Salvatore Basileo, the "eyes and ears" of the Norwalk YMCA, had the responsibility of reporting the misbehavior of staff to Greenwood.   [Plaintiff's Exhibit D, Basileo Tr. pp. 7-8]. Shortly after Backus' annual review and one or two months before Ms. Boyar's termination, Basileo was verbally instructed by Backus or Greenwood that the Fitness Center should be attended at all times.  [Plaintiff's Exhibit D, Basileo Tr. pp. 26].  This instruction was not reduced to writing, and Basileo was not aware that this was a policy to be enforced at the Norwalk YMCA prior to being verbally instructed to enforce it. [Id., 26-28].   Basileo testified that the Fitness Center was frequently left unattended so that staff members could make photocopies, use the restroom, use the telephone, conduct orientations, and fulfill other job responsibilities. [Plaintiff's Exhibit D, Basileo Tr. pp. 26, 31-32, 46, 49].  He further testified that he would often

go out to get breakfast on Saturday mornings, and call Plaintiff away from the membership desk to pick up her meal. [Id. at pp. 31]. In short, Mr. Basileo's testimony is diametrically opposed to the testimony of Greenwood that Plaintiff violated a long-standing and consistent policy by leaving the Fitness Center unattended. The lack of consistency between the testimony of Greenwood and, her own "eyes and ears," Basileo demonstrates that the alleged non-discriminatory reason for Ms. Boyar's termination was in fact false, and unworthy of credence.

Charles Mills, floor staff at the Norwalk YMCA, further testified that the Fitness Center was frequently left unattended so that Fitness Center staff could perform the functions of their jobs. [Deposition of Charles Mills 6/18/2007 ("Mills Tr."), relevant portions of which are annexed hereto as Exhibit E, pp. 14-18, 24]. He, too, testified that he was unaware that constant attendance of staff in the Fitness Center was a policy of the Norwalk YMCA, and did not learn of the existence of any such policy until after Ms. Boyar's termination when it was finally reduced to a written memorandum and brought to the attention of the staff at a meeting two days after Ms. Boyar's termination. [Plaintiff's Exhibit E Mills Tr. pp. 18-19; 34-38; Plaintiff's Exhibit CC, Memo to all Wellness Center Staff, 4/19/04].

Even the person who fired Ms. Boyar, CEO Debbie Greenwood, admitted that there was no written policy about leaving the fitness center unattended. [Plaintiff's Exhibit C, Greenwood Tr. pp. 64-5]. However, it was also her testimony that the policies that were reduced to writings (i.e., the memo requiring staff to check for bags in the hallway or that they

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-1210 • FACSIMILE: 203-319-0800 • EMAIL: MAIL@CBCGT.COM

must give tours to new members) were not actually required to be followed.  Terminating the Plaintiff, therefore, for violation of a policy that was poorly, if ever, communicated, and at best, inconsistently applied (and then only as against the plaintiff) is clearly evidence of pretext on the part of the Defendant.

On April 19, 2004, after the incident leading up to Plaintiff's termination, a memorandum was drafted instructing all staff members that the Fitness Center must not be left unattended. [Plaintiff's Exhibit CC].  Despite that memorandum, both Sal Basileo and Norwalk YMCA member Jeanette Krokus related that the Fitness Center was left unattended subsequently, and the records establish that there was no adverse employment action taken against the responsible supervisory on duty.  [Plaintiff's Exhibit D, Basileo Tr. pp. 39; Plaintiff's Exhibit S].

Finally, Defendant argues that Ms. Boyar's termination was a result of her "continued insubordination."  [Docket No. 48, Defendant's Memorandum pp. 19].  That statement could not be farther from the truth.  In yet another contradiction, Debra Greenwood testified that she did not rely on prior disciplinary memoranda relating to the attendance of the Fitness Center when she made her decision to terminate Plaintiff.  [Plaintiff's Exhibit C, Greenwood Tr. pp. 145-46].

The above examples of Defendant's behavior towards Plaintiff demonstrate that the Defendant's explanation for Ms. Boyar's termination is false and not worthy of any credence. When this proof is considered along with the evidence of Ms. Boyar's prima facie claim, it becomes clear that Defendant's proffered reasons for Ms. Boyar's suspension, demotion, and termination are mere pretext that create an inference of illegal discrimination.

## V.    CONCLUSION

As set forth in detail above, Plaintiff Ilene Boyar is entitled to summary judgment having proven a *prima facie* claim of discrimination under the Americans with Disabilities Act, and having successfully rebutted and shown to be false and illegitimate Defendant's proffer of an alleged non-discriminatory reason for Ms. Boyar's termination.

FOR THE PLAINTIFF
ILENE BOYAR

By:    _____
James T. Baldwin (ct08535)
Marisa F. Helfer (ct27435)
Coles, Baldwin & Kaiser, LLC
1261 Post Road, P.O. Box 577
Fairfield, CT 06824
T: 203-319-0800
F: 203-319-1210

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 ● FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-0800 ● FACSIMILE: 203-319-1210 ● EMAIL: MAIL@CBKCT.COM

## <u>CERTIFICATION</u>

I hereby certify that I have caused to be served a copy of the foregoing this 15th day of

May, 2009, via electronic mail upon the following counsel and *pro se* parties of record:

Loraine M. Cortese-Costa
Rachel Volkman Kushel
Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C.
1057 Broad Street
Bridgeport, CT 06604

/s/ _____
James T. Baldwin

COLES, BALDWIN & KAISER, ATTORNEYS & COUNSELORS AT LAW  1261 POST ROAD, P.O. BOX 577 • FAIRFIELD, CONNECTICUT 06824
TELEPHONE: 203-319-0800 • FACSIMILE: 203-319-1210 • EMAIL: MAIL@CBKCCT.COM

–27–